FILED
2022 DEC 19 03:39 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 22-2-15859-0 SEA

SUPERIOR COURT OF THE STATE OF WASHINGTON

FOR KING COUNTY

| | |
|---|---|
| NICOLE JOHNSON, | Case No.: 22-2-15859-0 SEA |
| Plaintiff, | |
| vs. | AMENDED COMPLAINT FOR RELIEF |
| SEATTLE UNIVERSITY, A CORPORATION, | (JURY TRIAL DEMANDED) |
| Defendants. | |

## I. PARTIES

1. Plaintiff Nicole Johnson is a graduate of Seattle University School of Law.

2. Defendant Seattle University is non-profit corporation that is based in Seattle, Washington.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this action as the amount in controversy exceeds the jurisdictional minimum amount required of this Court.

4. Venue in this Court is appropriate as Defendant is based in and operates in Seattle, King County, Washington.

## III. FACTUAL ALLEGATIONS

5. Plaintiff attended Seattle University School of Law (herein referred to as SU School of Law) from Fall 2016 through Fall 2019.

AMENDED COMPLAINT FOR RELIEF (JURY TRIAL DEMANDED) - 1

NICOLE JOHNSON
PLAINTIFF PRO SE
PIAZZA 4 NOVEMBRE, 2
LASTRA A SIGNA, FI ITALIA
EASTBOURNE2022@GMAIL.COM

6. Plaintiff paid most of her SU School of Law tuition with US government financial aid in the form of loans.

7. Plaintiff has disabilities that are sometimes visible to others. With reasonable accommodations, Plaintiff would in no way be disqualified from attending law school classes, being admitted to any state bar, or practicing law.

8. Plaintiff was harassed and bullied by certain instructors and staff at SU School of Law for having disabilities and for seeking reasonable accommodations for her disabilities. Plaintiff was repeatedly retaliated against for complaining about instances of discrimination and failure to implement agreed-upon disability accommodations.

9. Plaintiff suffered devastating reputational damage from the false allegations that a few professors and staff made about her. This included Professor Sara Rankin and others, who falsely maligned Plaintiff's character, competency and fitness to practice law in internal communication behind her back, as well as violating her privacy. Plaintiff discovered these reputational attacks and violation of her privacy through internal communication documents she received from her Family Educational Rights and Privacy Act (FERPA) request for documents.

10. Nobody at SU School of Law has ever made a formal complaint against Plaintiff, including complaints based on her conduct. There is a formal process for complaints against students, as described in the Student Handbook. Following this formal complaint process ensures due process, accountability, and the proper incorporation of complaints as part of the student's official record-- helping to ensure students are not victimized by gossip and unsubstantiated reputational attacks, as Plaintiff has been.

11. Plaintiff observed sexist treatment of female student at SU School of Law, including but not limited to women being subjected to sexist double standards in communication. Plaintiff believed that she was subjected to sexist treatment and devalued because of her gender.

12. Plaintiff observed multiple instances of racism at SU School of Law. This included students of color being singled out for mistreatment or racial harassment and course curriculum with racist content such as racist caricatures and stereotypes.

13. SU School of Law failed to provide a safe environment conducive to learning. SU School of Law students regularly frequented bars near campus, usually between classes, then returned to the SU School of Law premises, including classes, under the influence of alcohol. This caused some students to behave in ways that were highly distracting, offensive, distressing and sometimes threatening to other students, including to Plaintiff. This

AMENDED COMPLAINT FOR RELIEF (JURY TRIAL DEMANDED) - 2

NICOLE JOHNSON
PLAINTIFF PRO SE
PIAZZA 4 NOVEMBRE, 2
LASTRA A SIGNA, FI ITALIA
EASTBOURNE2022@GMAIL.COM

included racist and sexist behavior, behavior that constituted sexual harassment, as well as behavior that mocked and harassed Plaintiff based on her disability.

14. Plaintiff discussed her concerns about issues described in above paragraph 13 with Associate Dean Deming, Brooke Coleman and others at SU School of Law. However, Plaintiff's concerns were treated dismissively, with Coleman even reprimanding Plaintiff for complaining about other students.

15. On 15 February 2017, Dean Deming sent an email to the entire 1L section of students. In this email, she acknowledged offensive behavior among students, including racist behavior. However, neither Deming nor anyone Seattle University took concrete actions to hold anyone accountable for this behavior. Consequently, this offensive student behavior was allowed to continue indefinitely.

16. In early fall 2016, Plaintiff met separately with Dean Deming and Mary Bowman, head of the legal writing program at the time, to discuss problems in the legal writing class related to her disability and to seek disability accommodations. Although not hostile towards Plaintiff, Deming did not seem to know how to implement disability accommodations. Bowman was dismissive of Plaintiff's needs around her disabilities and told Plaintiff to go to another law school.

17. On 30 September 2019, Plaintiff met with Brooke Coleman, who taught the Civil Procedure I class that Plaintiff was enrolled in during Fall 2016. In this meeting, Plaintiff discussed her disabilities and requested accommodations for her disabilities. Coleman's response was that her disabilities were "a bunch of excuses."

18. Plaintiff complained of discrimination to Dean Deming, as well as to Mary Dawson of the Office of Institutional Equity, where she attempted to file a formal complaint. Dawson referred Plaintiff to Jeff Pixler in campus Human Resources and told her he would resolve her complaint. However, neither Pixler nor anyone in human resources seem to know how to assist Plaintiff with her discrimination complaint. Neither Dawson nor anyone in the Office of Institutional Equity appeared interested in assisting Plaintiff further, and instead misdirected her to people on campus who could not assist her,

19. Plaintiff asked to be switched to another Civil Procedure I section to avoid further discriminatory treatment from Professor Coleman, but this was refused even though the switch was possible. Plaintiff continued to founder in Coleman's Civil Procedure I because of dismissive treatment of her disabilities.

20. In Fall 2016, Plaintiff attempted to obtain disability accommodations from Seattle University's Disability Services office. Plaintiff had several conversations with Richard Okamoto, director of the Disability

AMENDED COMPLAINT FOR RELIEF (JURY TRIAL DEMANDED) - 3

NICOLE JOHNSON
PLAINTIFF PRO SE
PIAZZA 4 NOVEMBRE, 2
LASTRA A SIGNA, FI ITALIA
EASTBOURNE2022@GMAIL.COM

Services office, as well as others in this office. Although the Disability Services office typically coordinates disability accommodations for Seattle University students, it did not do so for SU School of Law, and it was unclear to this office if the School of Law even had a process for accommodating students with disabilities.

21. Finally, months later and near the end of the semester in December 2019—and after being prompted by Carol Schneider (Director of Academic Services)—Dean Deming agreed to make disability accommodations for Plaintiff. Plaintiff provided Deming the requested documentation of her disabilities.

22. Because of the delay and lack of proper implementation of disability accommodations—and the stress and emotional hurt of being harassed and disparaged for her disabilities and accommodations—Plaintiff received relatively poor grades in her some of her 1L courses. The other problems at SU School of Law as described in above paragraphs 11-15 were also distressing for Plaintiff and highly disruptive to Plaintiff's studies, hindering her academic performance throughout her 1L year.

23. In spring/summer 2017, Plaintiff applied to transfer to other law schools because these other law schools were a better fit for her professional objectives and because of her poor experience at SU School of Law. However, despite being accepted or waitlisted at theses law schools when she applied for the first year, Plaintiff was rejected as a transfer student due to grades in courses in which there was a partial or complete failure to implement disability accommodations.

24. In spring semester 2018, Plaintiff enrolled in Legal Writing II taught by legal writing professor Deirdre Bowen. From the start, Bowen refused to accept or implement Plaintiff's disability accommodations, and expressed hostility towards Plaintiff and her disabilities. This refusal to accommodate Plaintiff was especially apparent when Plaintiff and Dean Deming met with Bowen to discuss Plaintiff's disability accommodations. Without any justification, Bowen excluded Plaintiff from attending classes.

25. Dean Deming expressed her frustration at Bowen's treatment of Plaintiff, stating in a January 16, 2018 email to Mary Bowman: "I am a bit frustrated at having a faculty member tell me she wants a student out of a class when frankly other than missing class (which I agree was totally Nicole's fault) she has done nothing. On the other hand, if Deirdre is going to make things miserable for Nicole because she doesn't want her in the class, then that is not fair to Nicole. I am a little surprised that Laurel is advising her on this." Deming ended her email with an unhappy frowning emoji. Despite Deming's objections, Bowen succeeded in excluding Plaintiff from her class without justification, effectively forcing Plaintiff to drop the Legal Writing II course.

AMENDED COMPLAINT FOR RELIEF (JURY TRIAL DEMANDED) - 4

NICOLE JOHNSON
PLAINTIFF PRO SE
PIAZZA 4 NOVEMBRE, 2
LASTRA A SIGNA, FI ITALIA
EASTBOURNE2022@GMAIL.COM

26. During and after being excluded from Bowen's class and forced to drop, Plaintiff complained about Bowen's treatment of her, including her refusal to accept her disability accommodations and her hostility towards Plaintiff's disability. Plaintiff complained to multiple people at SU, including Dean Deming, Mary Bowman, and Dean Paul Holland. Plaintiff also filed a complaint with the Dept of Education Office of Civil Rights, and notified SU School of Law about this. However, nobody bothered to investigate further. On the contrary, Dean Annette Clark intervened to send Bowen a message of support and apologized for any "stress" the situation caused her. Dean Clark was dismissive of Plaintiff's complaints and asked her to continue attending Bowen's course, ignoring that Bowen was actively excluding Plaintiff from classes.

27. When nobody at SU followed up about Plaintiff's complaint, Plaintiff attempted to file a formal complaint with the Office of Institutional Equity. However, as usual, the Office of Institutional Equity was not receptive to Plaintiff's attempt to file a complaint.

28. Legal Writing II was a required course for the JD degree that is intended to be taken in the 2L year. However, because Bowen forced Plaintiff to drop Legal Writing II and because of SU School of Law's refusal to allow Plaintiff to transfer to another Legal Writing II section in spring 2018, Plaintiff was forced to re-take Legal Writing II during Fall 2019 outside the normal timeframe for completing this course. Furthermore, SU refused to make any accommodations for Plaintiff to attend remotely.

29. If not for this delay in completing Legal Writing II, Plaintiff would have graduated with her JD degree by summer 2019 and started her legal career. However, Plaintiff's career prospects were deferred and disrupted by this delay. Furthermore, at great expense and inconvenience to Plaintiff, she had to travel to Seattle and establish temporary accommodation there just to attend the Legal Writing II class in Fall 2019.

30. Dean Deming advised Plaintiff to take Legal Writing II with Sara Rankin. However, Rankin seemed uncomfortable with Plaintiff from the start. Noting this inexplicable tension, Plaintiff tried to avoid in-person communication with Rankin (other necessary in-class communication) and communicated with Rankin mostly by email throughout the semester.

31. Rankin appeared to give preferential treatment to male students, calling on them more frequently than female students, and especially more than Plaintiff. Rankin routinely ignored Plaintiff in class when Plaintiff attempted to participate in class discussions by raising her hand, while always being responsive to the male student who sat near Plaintiff. Rankin occasionally demonstrated behavior that Plaintiff found misogynistic and sexist, such

AMENDED COMPLAINT FOR RELIEF (JURY TRIAL DEMANDED) - 5

NICOLE JOHNSON
PLAINTIFF PRO SE
PIAZZA 4 NOVEMBRE, 2
LASTRA A SIGNA, FI ITALIA
EASTBOURNE2022@GMAIL.COM

as a misogynistic comment she made against someone whom she disagreed with politically. Finally, in a tense conversation with Rankin on 21 November 2019, Rankin referred to Plaintiff as "honey" in a way that Plaintiff perceived as condescending and sexist.

32. Students were required to meet with Rankin to discuss an important legal writing assignment. Rankin stressed the importance to all students of not encroaching on the meeting times of others. However, Rankin allowed a male student to encroach on Plaintiff's scheduled 30-minute meeting time by 10-15 minutes without offering to make this time up to Plaintiff. Plaintiff complained to Dean Deming about this incident in a November 12, 2019 email, emphasizing that Rankin gave preferential treatment to a male student.

33. Although Plaintiff did well academically in Fall 2019 Legal Writing II, and maintained near perfect attendance, Rankin belittled Plaintiff's competency. Also, when Plaintiff confided in Rankin and Deming because of a traumatic sexual harassment experience that required Plaintiff to ask for a small extension to an assignment, Rankin mocked and derided her because of this.

34. On November 21, 2019, Plaintiff asked if she could switch to another group of students to work with because a student in the original group had been disrespectful towards Plaintiff based on Plaintiff's disability. When Plaintiff explained this to Rankin, Rankin was immediately dismissive and accused Plaintiff of ruining the experience for others in the class by asking to switch groups. Although Rankin agreed to switch her to another group, she created much unnecessary drama over this with her derisive tone towards Plaintiff as well as involving other students unnecessarily (such as the students in the group that Plaintiff switched from) and violating Plaintiff's privacy and confidentiality in the process.

35. In the same conversation, Rankin discouraged Plaintiff from openly discussing her disabilities and implied that she could be reported to the state bar for doing so, refused admission to the bar and not allowed to practice law--implying that Plaintiff was not fit to practice law or even be a law student. At the time, Plaintiff believed her because of Rankin's position and expected knowledge of legal professionalism issues, acted on her advice and was careful not to discuss it further. Later Plaintiff found out this is not necessarily true for her disabilities and Rankin's "advice" was wrong.

36. Plaintiff attempted to address what she thought might have been a misunderstanding with Rankin. However, Rankin refused to discuss this with Plaintiff and told her to follow up with others. Plaintiff agreed and communicated with others instead of Rankin from then on.

AMENDED COMPLAINT FOR RELIEF (JURY TRIAL DEMANDED) - 6

NICOLE JOHNSON
PLAINTIFF PRO SE
PIAZZA 4 NOVEMBRE, 2
LASTRA A SIGNA, FI ITALIA
EASTBOURNE2022@GMAIL.COM

37. Rankin emailed multiple people at SU School of Law saying that she would fail Plaintiff for the "attendance and professionalism" component of the Legal Writing II course grade (she ended up giving Plaintiff a "D"). Rankin made numerous false statements about Plaintiff that impugned her fitness to practice law and falsely implied that Plaintiff engaged in conduct inconsistent with the legal profession. Rankin made these false statements to many people, including those with the power over Plaintiff's final grades, employment prospects connected to the law school and those with the power to report student character and fitness problems to the state bar.

38. Rankin also expressed that Plaintiff made her fear for her safety without any justification or evidence for saying this, prompting school officials to take serious measures to protect her, such as by involving campus police and even an outside attorney (not affiliated with SU) to potentially physically confront Plaintiff during mock oral exams.

39. In a November 26, 2019 email that Dickson sent to Rankin after the oral argument, Dickson said: "I wanted to let you know that everything went well with Nicole's argument today. Thank you Paul, for being close by if I needed you. She was nothing but respectful and lovely. She was nervous and seemed to know the law better than she expressed it to the judges." Despite this, Dickson continued to support Rankin in her attacks on Plaintiff.

40. Rankin persisted in this absurd narrative about Plaintiff as a threat to her "personal safety." For example, in her January 6, 2020 email to others at SU School of Law, she discussed how because she "intensely feared (Plaintiff's) reaction" she gave her a "D" instead of an "F" for Attendance and Professionalism. She then stated that she "fears what will happen when (Plaintiff) picks up her grade calculator." Later in the same email Rankin suggests aversion to further dispute with Plaintiff by stating "I fear I will never see the end of it with her." But in this same email Rankin says she was "so sick of being afraid of Plaintiff" that she wished to change the grade back to an "F"—an action that would exacerbate/extend the dispute.

41. Changing a student's grade in this manner described in paragraph 40 is highly irregular and in violation of SU School of Law's grading policies, which demonstrates the lengths that Rankin was willing to go to retaliate against Plaintiff. Moreover, SU School of Law supported Rankin in her willingness to flagrantly violate grading policies to retaliate against Plaintiff.

42. In the same January 6 email, Rankin also suggested that she was going to give Plaintiff an "F" in Professionalism and Attendance because Plaintiff "threatened" Seattle University. Rankin was referring to emails that Rankin was cc'd on in which Plaintiff expressed that she was going to file a complaint of discrimination and

AMENDED COMPLAINT FOR RELIEF (JURY TRIAL DEMANDED) - 7

NICOLE JOHNSON
PLAINTIFF PRO SE
PIAZZA 4 NOVEMBRE, 2
LASTRA A SIGNA, FI ITALIA
EASTBOURNE2022@GMAIL.COM

retaliation with the Office of Institutional Equity and the Department of Education Office of Civil Rights. This is further evidence of Rankin's and SU's retaliation against Plaintiff for complaining about discrimination and retaliation through the appropriate channels.

43. When Plaintiff attempted to complain about Rankin's treatment of her, Deming said: "Because the law school considers this matter closed, at this point neither I nor anyone else from the law school intends to respond to further inquiries regarding your grade in LWII." Indeed, everyone at Seattle University remained completely dismissive of Plaintiff's complaints of discrimination and mistreatment.

44. Dean Clark maintained her biased retaliatory treatment of Plaintiff along with her unconditional support for instructors' discriminatory harassment of Plaintiff. Clark categorically refused to consider Plaintiff's complaints in a fair objective manner, as is evidenced by her communication with Deirdre Bowen in above Paragraph 26, as well as her November 21 email to Rankin, in which Clark says: "Thanks so much for the heads up, Sara, and for keeping your cool despite the provocations. You clearly handled this situation in a professional and appropriate manner, and I will make that clear if Nicole contacts/meets with me."

45. Despite her bias, Dean Clark insisted on making discretionary decisions regarding Plaintiff's complaints and grade appeal. Plaintiff initially appealed her Legal Writing II grade to Dean Deming; however, Deming referred the matter to Clark, and Clark readily affirmed the Legal Writing II grade.

46. Rankin and others at SU School of Law flagrantly and repeatedly violated Plaintiff's privacy, not taking the legally required care to protect Plaintiff's private data and sensitive information and deliberately discussing Plaintiff's sensitive information in a careless and sometimes malicious manner.

47. SU School of Law is accredited by the American Bar Association. On 19 February 2020, Plaintiff made a complaint alleging lack of compliance with ABA standards, including gender and disability discrimination, as well as retaliation, against Plaintiff and the lack of meaningful feedback for the Legal Writing II "Attendance and Professionalism" grade. SU School of Law responded to this complaint dismissively and not in accordance with the ABA standards and procedures.

48. As a result of the unjustified attacks on Plaintiff's reputation, as well as the hostile discriminatory and derisive treatment by SU as described in the above paragraphs, Plaintiff has suffered hurt, humiliation and despondency, as well as physical illness, including debilitating migraines and other physical symptoms.

AMENDED COMPLAINT FOR RELIEF (JURY TRIAL DEMANDED) - 8

NICOLE JOHNSON
PLAINTIFF PRO SE
PIAZZA 4 NOVEMBRE, 2
LASTRA A SIGNA, FI ITALIA
EASTBOURNE2022@GMAIL.COM

## IV. FIRST CAUSE OF ACTION (Breach of Contract)

49. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1-48 above.

50. Plaintiff and Defendant entered into an agreement where Plaintiff agreed to pay tuition and Defendant agreed to provide legal educational services. The annual Student Handbook and other SOL publications constitute a written agreement between SOL and Plaintiff.

51. Seattle University School of Law's policies, as stated on page 54 of its Student Handbook, are:

> It is the policy of Seattle University that no qualified person shall, on the basis of disability, be excluded from participation in, be denied the benefits of, or be subject to discrimination in any job, facility, program or activity provided by the University. It is the policy and practice of the School of Law to comply with the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and state and local requirements regarding students and applicants with disabilities. Under these laws, no qualified individual with a disability shall be denied access to or participation in services, programs and activities of the law school.

And as stated on page 85 of the Student Handbook:

> As a Catholic and Jesuit university, Seattle University is a learning community that values the dignity and worth of persons. Consistent with its values, the University fosters the respect needed for students to live, work, study, and socialize together as a community. All members of the University community are expected to observe standards that reflect personal accountability and responsibility for the common good; demonstrate regard for the safety, security and health of others; maintain the atmosphere needed for study and reflection; show respect for individuals; and value truthfulness and personal integrity.

Furthermore, in the Student Handbook and elsewhere, Seattle University SOL indicates its status as an ABA-accredited law school and repeatedly claims to follow ABA policies.

52. Seattle University breached this contract with Plaintiff by 1) discriminating against Plaintiff for her disability and retaliating against her for complaining about discrimination, 2) failing to make reasonable accommodations for Plaintiff's disability and failing to provide equal access, 3) failing to fully implement agreed-upon accommodations, and 4) at even the highest SU School of Law level, Dean Annette Clark actively enabling and encouraging instructors to disregard these accommodations and engage in discriminatory harassment of Plaintiff and retaliate against her, going out of her way to support these instructors in this treatment of Plaintiff.

53. Seattle University breached this contract with Plaintiff by 1) enabling and encouraging students, professors and staff to engage in discriminatory harassment and other types of disrespectful and dehumanizing treatment towards Plaintiff that violated its policy described in above paragraph 51, while completely dismissing Plaintiff's complaint about this treatment, 2) enabling a toxic atmosphere of substance/alcohol abuse, racism, sexism, sexual harassment and discriminatory harassment, 3) causing unfounded reputational damage by maligning

AMENDED COMPLAINT FOR RELIEF (JURY TRIAL DEMANDED) - 9

NICOLE JOHNSON  
PLAINTIFF PRO SE  
PIAZZA 4 NOVEMBRE, 2  
LASTRA A SIGNA, FI ITALIA  
EASTBOURNE2022@GMAIL.COM

Plaintiff's character and fitness to practice law, 4) violating Plaintiff's confidence and privacy around her disability, complaints of discrimination, discriminatory harassment, and retaliation, and 5) violating policies that it agreed to as an ABA-accredited law school and failing to properly respond to Plaintiff's complaint according to ABA protocol.

54. As a result of Seattle University's breach of contract, Plaintiff suffered damages including lost educational and employment opportunities; being able to transfer to a better law school for her professional objectives; lost wages; exorbitant costs/loan burden for a program that is essentially worthless to her; emotional distress; severe reputational harm affecting her professional prospects; and other economic loss.

**V. SECOND CAUSE OF ACTION: (Violation of the Rehabilitation Act of 1973 29 U.S.C § 701 et seq.)**

55. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1-54 above.

56. Seattle University is a private religious university that receives funding from the United States Government, including in the form of federal financial aid from students (including from Plaintiff).

57. Because Seattle University receives funding from the US government, it is subject to Section 504 of the Rehabilitation Act, which prohibits discrimination based on disability.

58. Throughout all times material, Plaintiff's had disabilities that impaired her academic performance without reasonable disability accommodations.

59. Seattle University subjected Plaintiff to discrimination in violation of Section 504 of the Rehabilitation Act with its failure to provide reasonable disability accommodations, as well as allowing some students, instructors, administrators, and staff to engage in discriminatory harassment against Plaintiff and treat her in a hostile and degrading manner—even going as far as excluding her from classes and deliberately undermining her confidence to practice law because of her disability. Furthermore, Seattle University allowed certain instructors, administrators, and staff to retaliate against Plaintiff because of her disability and complaints of discrimination, violate her privacy and severely damage her reputation.

60. As a direct and proximate result of this discrimination and retaliation and violation of Section 504, Plaintiff suffered damages, including emotional distress, embarrassment, pain and suffering, humiliation, and embarrassment and bodily harm from emotional distress. Plaintiff also suffered economic damages due to 1) taking out loans and enormous debt to pay for a legal education that is of no value to her; 2) lost wages and other economic damage due to Seattle University delaying in her completion of a course required for her degree/graduation; 4) lost opportunities to transfer to other law schools because of poor 1L grades due to discriminatory treatment and failure

AMENDED COMPLAINT FOR RELIEF (JURY TRIAL DEMANDED) - 10

NICOLE JOHNSON
PLAINTIFF PRO SE
PIAZZA 4 NOVEMBRE, 2
LASTRA A SIGNA, FI ITALIA
EASTBOURNE2022@GMAIL.COM

to provide reasonable accommodations; and 4) psychological trauma inflicted on Plaintiff that has undermined her confidence to pursue a career as a US attorney.

## VI. THIRD CAUSE OF ACTION (Invasion of Privacy)

61. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1-43. 57. Seattle University is subject to Family Educational Rights and Privacy Act (FERPA), as well as the Washington Privacy Act.

62. Seattle University and its employees/agents flagrantly violated Plaintiff's privacy rights by carelessly and maliciously discussing Plaintiff's personal life, disabilities, and other sensitive information. Furthermore, Seattle University failed (and continues to fail) to maintain, store and distribute Plaintiff's data and records in a way that complies with FERPA and the Washington Privacy Act.

63. As a result of Seattle University's invasion of Plaintiff's privacy, Plaintiff has suffered distress, humiliation, embarrassment, reputational damage and other damages.

## IX. REQUEST FOR RELIEF

Wherefore, Plaintiff respectfully requests the following relief:

1. Damages in the amount to be proven at trial;

2. Fees and costs to Plaintiff Nicole Johnson for prosecuting this action; and

3. Such further relief as the court deems necessary.

Dated this 12 of December, 2022.

*[signature: Nicole Johnson]*

Nicole Johnson
Plaintiff Pro Se

AMENDED COMPLAINT FOR RELIEF (JURY TRIAL DEMANDED) - 11

NICOLE JOHNSON
PLAINTIFF PRO SE
PIAZZA 4 NOVEMBRE, 2
LASTRA A SIGNA, FI ITALIA
EASTBOURNE2022@GMAIL.COM